UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 25-80262-CIV-CANNON

**CARY CANTNER**,
*on behalf of himself and
others similarly situated*,

      Plaintiff,
v.

**GAME OF SILKS, INC.**, *et al.*,

      Defendants.
_____/

## ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL AND DIRECTING FINAL PLEADING

**THIS CAUSE** comes before the Court upon Plaintiff Cary Cantner's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (the "Motion"), filed on April 25, 2025 [ECF No. 31]. The Court has reviewed the Motion and the full record. Upon review, the Motion is **GRANTED**. The Court **APPOINTS** Cary Cantner as Lead Plaintiff and Wolf Popper LLP and Burwick Law, PLLC as Co-Lead Counsel.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Cary Cantner filed the operative Complaint in this putative securities class action on March 6, 2025 [ECF No. 6].[1] Defendant Game of Silks is a company that created a game in 2022 to bring "real-life horse racing to the metaverse" [ECF No. 6 ¶¶ 1, 40].[2] Participants in the game "could invest in virtual versions of real racehorses and, when the racehorses won at the race

---

[1] The Court dismissed the original complaint, which was filed on February 24, 2025 [ECF No. 1], because it was a shotgun pleading [ECF No. 5].

[2] The other Defendants are Game of Silks' CEO and founder Dan Nissanoff, its VP and founder Troy Levy, its COO Ron Luniewski, its CFO Derek Cribbs, and Tropical Racing, Inc. [ECF No. 6 ¶¶ 22–29].

track, the owners of the virtual horses would win real money" [ECF No. 6 ¶ 1]. Investors could purchase cryptocurrency assets that would allow them to own avatars (which were like jockeys), racehorses, parcels of land, and stables in the game's metaverse [ECF No. 6 ¶¶ 2, 40–51]. The cryptocurrency assets were sold as non-fungible tokens ("NFTs") that could be purchased and sold in the online economy [ECF No. 6 ¶ 2]. Plaintiff alleges that the Game of Silks NFTs are investment contracts and securities under the Securities Act, but Defendants never registered them with the S.E.C. as required by law [ECF No. 6 ¶¶ 115–132]. Plaintiff also alleges that Defendants built a community of investors, that the NFTs were marked primarily for their investment potential, and that Defendants told the community that their investments in the NFTs would grow [ECF No. 6 ¶¶ 3, 52–80].

In 2024, Plaintiff alleges that Defendants stopped making payments on winnings, leading to collapse of the value of the NFTs and stoppage of the project [ECF No. 6 ¶¶ 103–114]. Plaintiff alleges that Defendants withheld critical financial information about its business and were not transparent about the company's investors [ECF No. 6 ¶¶ 13–15, 112–114].

Plaintiff filed the operative Amended Complaint on March 6, 2025 [ECF No. 6], alleging:

- violations of Section 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e, 77l(a)(1), against all Defendants (Count I);

- violations of Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), against all Defendants (Count II);

- violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, against Defendants Nissanoff, Levy, Luniewski, and Cribbs (Count III); and

- unjust enrichment, in the alternative, against all Defendants (Count IV)

[ECF No. 6 ¶¶ 141–207]. Plaintiff brings this action on behalf of a putative class—"all purchasers of Game of Silks NFTs who were damaged thereby" [ECF No. 6 ¶ 137].

Plaintiff now moves for appointment as Lead Plaintiff under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 77z-1 [ECF No. 31]. In accordance

with the PSLRA, Plaintiff published notice of pendency of this suit on February 24, 2025, in *ACCESS Newswire*, announcing that the suit had been filed and advising putative class members of their opportunity to move the Court (within 60 days) for appointment as lead plaintiff [ECF No. 31 p. 5; ECF No. 31-2 (notice)]. No other putative class member has moved for appointment, and the time to do so has expired. 15 U.S.C. § 77z-1(a)(3)(A)(i)(II).

## LEGAL STANDARDS

In a securities class action under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph." 15 U.S.C. § 77z-1(a)(3)(B)(i). The statute requires the Court to "adopt a presumption that the most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that— [1] has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); [2] in the determination of the court, has the largest financial interest in the relief sought by the class; and [3] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)–(cc). This presumption may be rebutted only by proof that the presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa)–(bb).

## DISCUSSION

Plaintiff Cantner has satisfied all requirements of the PSLRA to be named as the lead plaintiff.

**A. Plaintiff Cantner has filed a proper motion to be appointed and filed the complaint itself**.

Plaintiff Cantner filed the original complaint and the operative Amended Complaint on

behalf of the putative class [ECF Nos. 1, 6]. He is also the only plaintiff who has filed a timely motion seeking appointment as lead plaintiff [ECF No. 31], as the notice filed on February 24, 2025, triggered the 60-day time period within which other plaintiffs could move to be appointed lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(A)(i)(II); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action."). Plaintiff Cantner has thus met the first requirement to become the presumptive most-adequate plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa).

**B. Plaintiff Cantner has the "largest financial interest" in the relief sought by the class.**

In assessing the financial interests of parties competing for lead plaintiff status, the Court will generally consider: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered. *Murphy v. Argo Blockchain plc*, 683 F. Supp. 3d 211, 217 (E.D.N.Y. 2023); *see Okaro v. Icahn Enters. L.P.*, 702 F. Supp. 3d 1296, 1300–01 (S.D. Fla. 2023) (applying same four factors in analyzing lead-plaintiff motion under identical provision in PSLRA for actions brought under the Exchange Act, 15 U.S.C. 78u-4(a)(3)). "Of the four factors, most courts give the greatest weight to estimated losses." *Okaro*, 702 F. Supp. 3d at 1300.

While all four factors are not readily apparent in this case, Plaintiff Cantner has allegedly suffered an approximate loss of $129,706.36 related to his purchases of Game of Silks NFTs [ECF No. 31 p. 8; ECF No. 31-3 (Cantner declaration containing chart of all transactions)]. Giving the greatest weight to that factor, and having no other movant against which to compare

these losses, the Court has no reason to doubt that Cantner has the largest financial interest in the relief sought by the class. *See Finocchiaro v. NQ Mobile, Inc.*, No. 15-6385, 2017 WL 1535382, at *1 (S.D.N.Y. Apr. 17, 2017) ("Therefore, as the sole movant, he has the 'largest financial interest in the relief sought by the class' of any movant.") (quoting 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb)); *Lopez v. CTPartners Exec. Search Inc.*, No. 15-1476, 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) ("Because no prospective lead plaintiff with a larger financial stake in this case has come forward, and the Court has no access to non-parties' financial records, the Court must assume that Lopez's financial interest renders him suitable to serve as lead plaintiff.").

   C. **Plaintiff Cantner has made a prima facie showing of typicality and adequacy under Rule 23.**

As to the third requirement—compliance with Rule 23—"[t]his inquiry is not as 'searching as the one triggered by a motion for class certification,'" but requires the proposed lead plaintiff "to make a prima facie showing of typicality and adequacy." *Shelby Twp. Police & Fire Ret. Sys. v. Celsius Holdings, Inc.*, No. 24-CV-81472, 2025 WL 671395, at *3 (S.D. Fla. Mar. 3, 2025) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001)).

To satisfy the typicality requirement, the proposed lead plaintiff must have claims or defenses that are typical of the claims and defenses of the class. *Id.*; Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied where the "named representatives' claims share the same essential characteristics as the claims of the class at large." *Okaro*, 702 F. Supp. 3d at 1301 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiff Cantner's claims meet this standard because they share the same essential characteristics of the claims of the proposed class at large. The claims are all based on purchases of Game of Silks NFTs that were

allegedly unregistered securities in violation of federal securities law. The claims are also all based on Defendants' allegedly false and misleading statements to NFT-purchasers at-large. This is a sufficient prima facie showing of typicality. *See Shelby Twp.*, 2025 WL 671395, at *3; *Okaro*, 702 F. Supp. 3d at 1301.

To satisfy the adequacy requirement, the proposed lead plaintiff must "fairly and adequately protect the interests of the class." *Id.*; Fed. R. Civ. P. 23(a)(4). "This inquiry rests on two bases: common interests between the representative and the class, and the willingness and ability to vigorously prosecute the action." *Shelby Twp.*, 2025 WL 671395, at *3 (citing *In re 21st Century Holding Co. Sec. Litig.*, No. 07-61057-CIV, 2007 WL 9220955, at *6 (S.D. Fla. Nov. 20, 2007)). The Court is satisfied that Plaintiff Cantner has made a prima facie showing of adequacy as well. His $129,706.36 in stated losses indicates a sufficient interest in the outcome, and those losses, as alleged, were triggered by Defendants' wrongful acts toward all purchasers of the NFTs. He has shown a willingness and ability to vigorously prosecute this action because he filed the original complaint, the operative Amended Complaint, the instant Motion, and a sworn declaration (plus other attachments); obtained counsel from two firms experienced in securities and cryptocurrency litigation; and attested to his willingness to provide deposition and trial testimony [ECF Nos. 1, 6, 31, 31-3].

\* \* \*

In sum, Plaintiff Cantner is entitled to the presumption that he is the most adequate lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)–(cc). There is no other movant in this case, so there is no rebuttal evidence under 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

### D. Appointment of Lead Counsel

"The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). "There is a strong presumption in

6

favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Lopez*, 2015 WL 2431484, at *3; *see also In re Cavanaugh*, 306 F.3d 726, 733 n.11 (9th Cir. 2002) ("Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.").

It is apparent from the materials provided to the Court that Plaintiff Cantner's Co-Lead Counsel with the law firms of Wolf Popper and Burwick Law have extensive experience in securities litigation and class actions involving issues similar to those raised in this case [ECF No. 31-4 (Wolf Popper resume); ECF No. 31-5 (Burwick Law resume)]. The Court thus approves Wolf Popper and Burwick Law as Co-Lead Counsel in this case.

## CONCLUSION

1. Plaintiff's Motion to Appoint Lead Plaintiff Cary Cantner [ECF No. 31] is **GRANTED**.
2. Plaintiff Cary Cantner is appointed **LEAD PLAINTIFF** in this matter.
3. Wolf Popper LLP and Burwick Law, PLLC are appointed **CO-LEAD COUNSEL**.
4. On or before **June 26**, **2025**, in accordance with the Court's prior Order [ECF No. 30], Lead Plaintiff Cary Cantner shall either file a Second Amended Complaint or designate the Amended Complaint [ECF No. 6] as operative via appropriate notice.

**ORDERED** in Chambers at Fort Pierce, Florida, this 12th day of June 2025.

                                                **AILEEN M. CANNON**
                                                **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record