IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:25-cv-80262

| | |
|---|---|
| CORY CANTNER, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GAME OF SILKS, INC., DAN NISSANOFF, TROY LEVY, TROPICAL RACING, INC., RON LUNIEWSKI, and DEREK CRIBBS,<br><br>    Defendants. | JURY TRIAL DEMANDED |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND STAY OR, IN THE ALTERNATIVE, TO TRANSFER, OR TO DISMISS UNDER RULE 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    Plaintiff Assented to a Binding Arbitration Agreement and Class Action Waiver. ............................................................................................................. 2

        A.    Plaintiff Did Not Rebut Defendants' Competent Evidence of Agreement. ................................................................................................ 2

        B.    The Registration Screen Gave Clear Notice; Arbitration Was Not Limited to Privacy Issues. ............................................................... 4

        C.    Co-Defendants May Compel Arbitration; No Waiver. ............................... 5

    II.    Silks NFTs Are Not "Securities" Under *Howey* ....................................................... 8

    III.    Plaintiff Fails to State a Claim Under Section 12(a)(1) or 12(a)(2) Against Tropical. .................................................................................................................. 9

    IV.    Plaintiff's FDUTPA and Unjust Enrichment Claims Also Fail. ............................ 10

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barnhart v. Thomas*,
    540 U.S. 20 (2003) .................................................................................................................. 4

*Bazemore v. Jefferson Capital Systems, LLC*,
    827 F.3d 1325 (11th Cir. 2016) ............................................................................................... 3

*Cunningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc.*,
    776 So. 2d 940 (Fla. Dist. Ct. App. 2000) ............................................................................... 6

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ................................................................................................................. 3

*Escobal v. Celebration Cruise Operator, Inc.*,
    482 Fed. Appx. 475 (11th Cir. 2012) ....................................................................................... 6

*Harper v. O'Neal*,
    746 F. Supp. 3d 1360 (S.D. Fla. 2024) .......................................................................... 8, 9, 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ................................................................................................................... 6

*Herzog v. Superior Ct.*,
    101 Cal. App. 5th 1280, 321 Cal. Rptr. 3d 93 (2024) .............................................................. 5

*Hogan v. City of Fort Walton Beach*,
    2019 WL 11638966 (N.D. Fla. June 3, 2019) ......................................................................... 6

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
    845 F.3d 1351 (11th Cir. 2017) ............................................................................................... 7

*Lamonaco v. Experian Info. Sols., Inc.*,
    141 F.4th 1343 (11th Cir. 2025) ..................................................................................... 2, 3, 6

*Lavigne v. Herbalife, Ltd.*,
    967 F.3d 1110 (11th Cir. 2020) ............................................................................................... 7

*Lockhart v. United States*,
    577 U.S. 347 (2016) ................................................................................................................. 4

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ................................................................................................................. 9

*SBMH Group DMCC v. Noadiam USA, LLC*,
    297 F. Supp. 3d 1321 (S.D. Fla. 2017) .................................................................................... 7

*SEC v. ETS Payphones, Inc.*,
   408 F.3d 727 (11th Cir. 2005) ........................................................................................... 8

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946) ........................................................................................................... 8

*Shireman v. Tracker Marine, LLC*,
   2019 WL 13267902 (M.D. Fla. Mar. 12, 2019) ................................................................. 7

*United Hous. Found., Inc. v. Forman*,
   421 U.S. 837 (1975) ........................................................................................................... 9

*Valiente v. Nexgen Glob., LLC*,
   2023 WL 6213583 (S.D. Fla. Sept. 22, 2023) .................................................................... 5

*Valiente v. StockX, Inc.*,
   645 F.Supp.3d 1331 (S.D. Fla. 2022) ................................................................................. 3

**Statutes**

15 U.S.C. § 77l(a)(2) .................................................................................................................. 10

9 U.S.C. § 4 ............................................................................................................................ 2, 3

**Rules**

S.D. Fla. L.R. 7.1(c)(1) ............................................................................................................ 5, 6

**Other Authorities**

JAMS Comprehensive Arbitration Rules & Procedures r. 8(b) ........................................... 1, 5, 6

## **INTRODUCTION**

Plaintiff cannot avoid the arbitration agreement and class waiver he accepted as a condition of using the Game of Silks platform. Defendants carried their burden under the FAA by submitting sworn declarations and exhibits showing that no user could create an account, receive rewards, or otherwise participate without affirmatively assenting to the Terms. Plaintiff admits he received dozens of rewards—which was possible only after agreeing to the Terms at registration—and he never denies that he did so. Plaintiff's attorney argument does not rebut this factual showing.

Plaintiff's argument that non-signatories cannot enforce the agreement fares no better. The Terms incorporate JAMS Rule 8(b), which delegates such threshold questions to the arbitrator, and even if the Court reached the issue, non-signatory officers and affiliates may compel arbitration where, as here, the claims against them are inseparable from those against the company.

Even setting arbitration aside, the SAC fails to plausibly allege Silks NFTs qualify as securities under *Howey*. Unlike the NFTs in *Harper*, which the court found tethered to a pooled DAO treasury, Silks NFTs were discrete collectibles linked to individual horses, with rewards based on race outcomes and market resale, not promoter management. Plaintiff himself reaped over $47,000 in rewards and resale proceeds—an active, consumptive use inconsistent with the passive-investment model that *Howey* regulates. Tropical Racing is not alleged to have sold NFTs or made actionable misstatements, and the fallback FDUTPA and unjust enrichment claims fail because puffery is not deception and equity cannot override the parties' express contract.

In short, Plaintiff's opposition confirms this case belongs where the parties agreed—in individual arbitration—and that, even if it did not, the SAC collapses on the merits.

## ARGUMENT

**I.     Plaintiff Assented to a Binding Arbitration Agreement and Class Action Waiver.**

    **A.     Plaintiff Did Not Rebut Defendants' Competent Evidence of Agreement.**

Under Section 4 of the FAA, once the party moving to compel arbitration submits competent evidence of an agreement, the burden shifts to the opposing party to come forward with evidence creating a genuine dispute of fact. 9 U.S.C. § 4; *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1347–1348 (11th Cir. 2025). Defendants easily carried their initial burden. They submitted three sworn declarations with exhibits detailing the GOS registration process. ECF 40–2 to 40–6. Those declarations confirm that no user could receive rewards or participate on the platform without first registering for an account on GOS's website by clicking a checkbox agreeing to the Terms (hyperlinked on the registration page), and then clicking the "Create My Account" button. ECF 40–3 ¶¶ 3–6; ECF 40–4 ¶¶ 3–8. The Terms contained a prominently disclosed, broad arbitration clause and class action waiver. ECF 40–4 ¶¶ 10, 12, 14; ECF 40–6. And, as the CFO testified, the finance department could not and did not pay rewards unless registration and assent were complete. ECF 40–2 ¶ 3.

Plaintiff offered nothing to rebut that record. He did not submit a declaration denying that he created an account or clicked "I Agree." He did not claim someone else created his account. Nor did he dispute that the Terms contained the arbitration clause. Instead, Plaintiff relied solely on attorney argument that Defendants did not "affirmatively state" that he created an account. Opp. at 6. But Plaintiff admitted account creation in submitting a declaration attesting to dozens of rewards transactions (labeled "Earn") that would only have been possible if he created an account. *See* SAC ¶ 25 (citing ECF 31-3). By unrebutted testimony, those transactions were impossible without registration and assent. ECF 40–2 ¶ 3. Plaintiff's judicial admissions thus foreclose any genuine dispute that he registered and assented to the Terms.

Courts routinely enforce arbitration agreements on similar or lesser evidence. In *Lamonaco*, the Eleventh Circuit compelled arbitration based on a corporate officer's declaration describing the online enrollment process, attaching screenshots, and including the operative terms. 141 F.4th at 1347–48. The court held that because the declaration was unrebutted, "the FAA and Florida contract law require no more." *Id.*[1] Likewise, in *Valiente v. StockX, Inc.*, Judge Bloom compelled arbitration where the company submitted evidence of its sign-up process and the plaintiff failed to offer any contrary proof. 645 F. Supp. 3d 1331, 1337–39 (S.D. Fla. 2022).

Plaintiff's remaining arguments are red herrings. It is irrelevant that NFTs could be purchased on OpenSea. Rewards could not be paid without registration and assent, ECF 40–2 ¶ 3, and Plaintiff admits to receiving rewards, ECF 30-3. References in the 2022 White Paper are likewise immaterial; Plaintiff's own receipt of payments proves account creation and assent. *See id.* And his suggestion that Defendants failed to show how payments were matched to account holders ignores sworn testimony that the GOS finance system categorically prevented payments unless account registration was complete. ECF 40–2 ¶ 3. No case requires the "hyper-technical" proof Plaintiff demands, particularly where he does not deny assent. Accordingly, there is no factual issue for trial, and Section 4 compels an immediate order directing Plaintiff to arbitration. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

---

[1] The *Lamonaco* court distinguished *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016)—a case on which Plaintiff relies. In *Bazemore*, the defendant relied on nothing more than a barebones affidavit summarily asserting online assent, with no evidence of what terms were presented or whether arbitration was ever offered. *Id.* at 1330–31. Faced with that evidentiary void, the Eleventh Circuit found no agreement. *Id.* at 1331. By contrast, *Lamonaco* upheld arbitration where the company described the sign-up process in detail, attached the Terms, and included screenshots—the same type of proof Defendants submit here. 141 F.4th at 1347–48. This case is therefore like *Lamonaco*, not *Bazemore*.

**B.     The Registration Screen Gave Clear Notice; Arbitration Was Not Limited to Privacy Issues.**

Plaintiff cannot avoid arbitration by claiming that the assent box created confusion. Opp. at 9–10. The language—"I've read and agree with the Terms & Conditions and the Privacy Policy concerning the use of my personal data"—does not mislead a reasonable user into believing arbitration was confined to privacy matters. Notably, Plaintiff never contends he was misled; his theory rests entirely on an abstract parsing untethered to his own experience.

Nothing in the assent box supports Plaintiff's attempt to limit arbitration to privacy issues. Ordinary rules of interpretation point the other way. Under the rule of the last antecedent, a limiting phrase ordinarily modifies only the noun it immediately follows. *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *Lockhart v. United States*, 577 U.S. 347, 351 (2016). The phrase "concerning the use of my personal data" follows "the Privacy Policy," and thus modifies only that policy—not "the Terms & Conditions." The definite article ("the Privacy Policy") underscores the distinction, and the layout reinforces it: "Terms & Conditions" appeared as a separate hyperlink on its own line, followed by the distinct hyperlink to the Privacy Policy, which carried the personal-data qualifier. *See* ECF 40-5 (Ex. A to Nissanoff & Luniewski Decls.). The spacing and formatting visually convey that the personal-data language qualified only the Privacy Policy:

> ☐ I've read and agree with the **Terms & Conditions** and the **Privacy Policy** concerning the use of my personal data.

*Id.* The Terms themselves reinforce that conclusion, announcing in bold, all-caps that they contain binding arbitration and class action waiver clauses. *See* ECF 40-6 (Ex. B) at 1. The arbitration section—titled "Dispute Resolution; Binding Arbitration"—speaks broadly to "[a]ll disputes

4

arising out of or in connection with" the contract for the platform; it has nothing to do with privacy. A user reviewing the Terms could not reasonably conclude arbitration was limited to data issues.

Finally, Plaintiff's reliance on *Valiente v. Nexgen Glob., LLC*, 2023 WL 6213583, at *11–12 (S.D. Fla. Sept. 22, 2023), and *Herzog v. Superior Ct.*, 101 Cal. App. 5th 1280, 1299–1302, 321 Cal. Rptr. 3d 93 (2024), is misplaced. Those cases involved very different interfaces that affirmatively misdirected users—either by tying the click solely to a different purpose or by never tying the click to terms of use at all. In *Valiente*, the only button the plaintiff clicked authorized marketing texts and said nothing about terms of use 2023 WL 6213583, *11; and in *Herzog*, the "Legal" screen affirmatively told users their click meant that their personal information would be collected, used, and shared consistent with the Privacy Policy and Terms of Use, thereby "undo[ing] whatever notice it might have been furnishing" of broader terms. 321 Cal. Rptr. 3d at 1301. None of those flaws exist here. The GOS interface unambiguously required assent to the full Terms—including the arbitration clause and class action waiver—and nothing in the text suggested the Terms (or the arbitration clause contained therein) were limited to privacy issues.

### C. Co-Defendants May Compel Arbitration; No Waiver.

Plaintiff's contention that GOS' co-Defendants waived enforcement of the arbitration clause is meritless. Opp. at 12–13. Defendants moved to compel arbitration on behalf of all Defendants (not just GOS) and expressly invoked JAMS Rule 8(b), which delegates threshold questions of "who are proper Parties to the Arbitration" to the arbitrator. ECF 40 and 40-1 at 6 and 12. Plaintiff plainly understood that the co-Defendants sought enforcement because he devoted an entire section in his Opposition to arguing both that they could not and that the Court, rather than the arbitrator, should decide the issue. Opp. at 12–14. In any event, Local Rule 7.1(c)(1) permits a reply to "rebut matters raised in the memorandum in opposition," and Defendants are entitled to respond to Plaintiff's effort to exclude the co-Defendants. S.D. Fla. Local Rule 7.1(c)(1); *see also*

5

*Hogan v. City of Fort Walton Beach*, 2019 WL 11638966, at *2 (N.D. Fla. June 3, 2019) (plaintiff "opened the door" to reply arguments by raising new theory in response). Plaintiff cannot claim prejudice or surprise: he himself briefed the co-Defendant enforcement issue, citing law and facts. Having chosen to litigate the issue, he cannot bar Defendants from responding.

In any event, Plaintiff's argument that GOS' co-Defendants (the company officers and Tropical) cannot enforce the arbitration clause fails for multiple reasons. First, the Terms incorporate JAMS Rule 8(b), which delegates to the arbitrator "jurisdictional and arbitrability disputes, including disputes over … who are proper Parties to the Arbitration." Courts are required to enforce such delegations. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65–68 (2019); *Lamonaco*, 141 F.4th at 1348–49. Plaintiff's objection—that the non-signatory co-Defendants cannot compel arbitration—goes directly to scope and enforceability, issues committed to the arbitrator.

Second, even if the Court were to reach the issue, the arbitration provision's breadth independently requires enforcement. It covers "[a]ll disputes arising out of or in connection with this contract, or in respect of any defined legal relationship associated therewith or derived therefrom," without excluding claims against GOS's officers, agents, or affiliates. ECF 40–6 at ¶ 15(i). Plaintiff's own allegations treat all Defendants as part of a single enterprise engaged in a common scheme. *See, e.g.*, SAC ¶¶ 1–4, 124, 131. Courts hold that non-signatories may enforce arbitration clauses where, as here, their claims are "inextricably intertwined" with the contract. *See, e.g., Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed. Appx. 475, 476 (11th Cir. 2012); *Cunningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc.*, 776 So. 2d 940, 943 (Fla. Dist. Ct. App. 2000) (compelling arbitration where claim against the non-signatory were "intimately intertwined"

with the underlying contract). Plaintiff cannot evade arbitration by suing GOS's officers and their entities for the same intertwined conduct.

Third, the no-third-party-beneficiaries clause does not preclude enforcement by the co-Defendants. It states: "Other than as otherwise *expressly set forth* herein, these Terms do not and are not intended to confer any rights or remedies upon any person or entity other than you." *See* ECF 40-6 (Ex. B) ¶ 16(ii) (emphasis added). The arbitration clause itself is such an express carve-out, extending to "[a]ll disputes arising out of or in connection with this contract, or in respect of any defined legal relationship associated therewith or derived therefrom." *Id.* Reading this expansive grant would nullify the parties' express agreement and contravene the settled rule that plaintiffs may not avoid arbitration simply by suing a signatory's officers and affiliates for the same conduct.

Finally, the cases Plaintiff cites (Opp. at 12–14) do not compel a different outcome. Each turned on materially different circumstances—either contract language expressly limited to signatories or claims divorced from the agreement containing the arbitration clause. In *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351 (11th Cir. 2017), the arbitration clause was limited to disputes "between the parties." In *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110 (11th Cir. 2020), applying California law, the court found RICO claims based on alleged misconduct independent of, and not "founded in or intimately connected with" the contract. In *SBMH Group DMCC v. Noadiam USA, LLC*, 297 F. Supp. 3d 1321 (S.D. Fla. 2017), foreign law categorically barred non-signatory enforcement. And in *Shireman v. Tracker Marine, LLC*, 2019 WL 13267902 (M.D. Fla. Mar. 12, 2019), the claims arose under a separate warranty outside the arbitration agreement. Here, by contrast, the clause is expansive, covering "all disputes arising out of or in connection with" the Terms and "any defined legal relationship associated therewith or

7

derived therefrom." Plaintiff's own allegations cast all Defendants as participants in a single scheme under those Terms, squarely bringing the claims against the officers and entity squarely within the clause's scope.

## II.  Silks NFTs Are Not "Securities" Under *Howey*

Plaintiff's Opposition does not show that the Silks NFTs are "investment contracts" under the Securities Act. To qualify, there must be an investment of money in a common enterprise with a reasonable expectation of profits derived predominantly from the efforts of others. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 731–32 (11th Cir. 2005). Plaintiff does not establish these elements.

First, Plaintiff wrongly equates GOS's reinvestment of sale proceeds into platform development with the pooling of investor funds. Opp. at 16. But a company's decision to spend revenue on its operations does not itself establish a common enterprise. Courts applying the "broad vertical commonality" test focus on whether investors' fortunes depend on a promoter's managerial efforts. *ETS Payphones*, 408 F.3d at 732. Plaintiff's own allegations show the opposite: each NFT was a distinct digital collectible tied to a specific horse or other real-world asset, and any reward turned on that horse's racing performance or the asset's popularity. SAC ¶¶ 4, 52. That individualized structure defeats any finding of a common enterprise.

Second, Plaintiff understates the central role of the DAO in *Harper v. O'Neal*, 746 F. Supp. 3d 1360 (S.D. Fla. 2024). There, this Court described the DAO as a "critical pillar" of the Astrals project and emphasized that without it, there would be no common enterprise under *Howey*. *Id.* at 1374 ("If the Astrals group's main purpose was only 'pillar B,' [and therefore excluded the DAO] then Defendants would be correct in arguing that there is no common enterprise[.]"). Here, no DAO, governance token, or comparable pooling structure ever existed. SAC ¶ 108. *Harper* therefore cuts against Plaintiff: it confirm that in the absence of a DAO or equivalent collective

8

mechanism, there can be no common enterprise—and thus the Silks NFT are not securities.

Third, Plaintiff fails to overcome Defendants' showing that Silks NFTs were bought for use, not investment. *See United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852–53 (1975) ("when a purchaser is motivated by a desire to use or consume the item purchased … the securities laws do not apply"). From the outset, Silks NFTs functioned as in-game collectibles within a fantasy-sports platform. SAC ¶¶ 1–2, 25, 52, 134–35. Buyers used them to enter races, compete, and earn gameplay rewards—features Plaintiff himself utilized. These are characteristics of a user-driven product, not an investment contract. Unlike the nonfunctional "digital pictures" in *Harper*, Silks NFTs enabled immediate access to the platform's core features, not a vehicle for passive investment. Accordingly, the Silks NFTs do not meet Howey's requirements and therefore are not securities under the Act.

### III.  Plaintiff Fails to State a Claim Under Section 12(a)(1) or 12(a)(2) Against Tropical.

Plaintiff's effort to salvage his claims against Tropical Racing rests on a few generalized statements he attributes to Tropical. Opp. 19–21. But none of those statements suffice to make Tropical a statutory seller under Section 12. At most, they reflect the kind of "gratuitous advice" that *Pinter* expressly excludes from active solicitation. *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Nor does Plaintiff allege that he even saw—let alone relied on—any Tropical communication. In fact, the very case Plaintiff cites, *Wildes v. BitConnect Int'l PLC*, confirms that *Pinter* requires more: solicitation must actually succeed in bringing about a purchase. 25 F.4th 1341, 1346 (11th Cir. 2022). Because Plaintiff never alleges that Tropical's supposed solicitations reached him or induced his purchase, his claim necessarily fails.

Plaintiff's reliance on *Harper v. O'Neal*, 746 F. Supp. 3d 1360 (S.D. Fla. 2024), only underscores the failure to sufficiently allege that Tropical actively and successfully solicited the sale of any security. There, the celebrity defendant was the public face of the project: he promoted

9

NFTs on social media, invited fans to Discord, reassured investors daily, predicted price floors, and urged followers to "hop on the wave before it's too late." *Id.* at 1368–69. By contrast, the SAC attributes to Tropical only (at most) an April 2022 press release noting enthusiasm about the venture, a December 2022 announcement of another entity's investment, and a newsletter referencing "opportunity for Silks players." SAC ¶¶ 86, 89–90.

The Section 12(a)(2) claim fares no better. That provision applies only to false or misleading statements in a prospectus or sales communication. 15 U.S.C. § 77l(a)(2). Plaintiff effectively concedes that Tropical's statements cannot be shown false, instead pointing to allegations about other Defendants. Opp. 21–22 (citing SAC ¶¶ 174–175). Yet he never explains how Tropical's own statements were false or misleading when made. Generic expressions of excitement or references to partnerships are non-actionable puffery, not material misrepresentations or omissions. Absent specific allegations of falsity tied to Tropical, the § 12(a)(2) claim fails.

### IV.  Plaintiff's FDUTPA and Unjust Enrichment Claims Also Fail

Plaintiff's Opposition does not overcome the fundamental defects in the alternative state law claims identified in Defendants' motion to dismiss. ECF 40-1 at 20–23. Plaintiff identifies no specific false statement of fact, ignores explicit written disclaimers, and relies on generalized promotional language that courts routinely reject as puffery. Further, while the Silks NFTs are not securities, if they were, Plaintiff's FDUTPA claim would be barred for that reason alone. His unjust enrichment theory is equally deficient, as he voluntarily participated in the platform, received substantial benefits, and does not allege conduct that would make Defendants' retention of those benefits unjust.

### **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion at ECF 40.

Dated: September 2, 2025

Respectfully submitted,

*/s/ Robert K. Tucker II*
GORDON REES SCULLY
MANSUKHANI LLP
Robert K. Tucker II
Fla. Bar. No. 51641
rtucker@grsm.com
100 SE Second Street, Suite 3900
Miami, Florida 33131
Tel: 305.428.5300

Clair E. Wischusen (*pro hac vice*)
cwischusen@grsm.com
277 S. Washington Street, Suite 550
Alexandria, VA 22203
202.800.2999

Peter G. Siachos (*pro hac vice*)
psiachos@grsm.com
677 King Street, Suite 450
Charleston, SC 29403
843.278.5900

*Attorneys for Defendants Game of Silks, Inc., Troy Levy, Tropical Racing, Inc., Ron Luniewski, and Derek Cribbs*


*/s/ Cody German*
COLE, SCOTT & KISSANE, P.A.
Cody German
Fla. Bar. No. 58654
Cody.German@csklegal.com
S. Jonathan Vine
Fla. Bar. No. 10966
jonathan.vine@csklegal.com
Tiffany J. Hornback
Fla. Bar. No. 1031263
tiffany.hornback@csklegal.com
9150 South Dadeland Boulevard, Suite 1400
Miami, Florida 33156
305.350.5300

*Attorneys for Defendant Dan Nissanoff*

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 2, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve a true and correct copy of the foregoing on all counsel or parties of record designated to receive service in CM/ECF.

<em>/s/ Robert K. Tucker II</em>